UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| DERRELL PRICE, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 3:12 CV 868 |
| | ) | |
| SUPERINTENDENT, | ) | |
| | ) | |
| Respondent. | ) | |

# OPINION and ORDER

Derrell Price, a prisoner confined at the Miami Correctional Facility ("MCF"), submitted a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 dealing with the loss of earned credit time in a disciplinary hearing at the Westville Correctional Facility ("WCF"). On June 14, 2012, WCF official Sharon Hawk wrote a conduct report charging Price with assault/battery on another person with a weapon, including the throwing of bodily fluids or waste, or inflicting serious injury, Code A 111/102. According to the conduct report:

> On the above date & time I received a call from the officer in PCU stating the front range was flooding again, previously this day our engineer crew had pulled 6 plastic garbage bags from the drainage pipe. I went to PCU and stood [at] the end of the hallway listening to several offenders yelling about the flood and I witnessed offender Price throwing what appeared to be feces out of his cell toward the officers walking the range. When I walked to Offender [Price's] cell and asked what in the world are you doing he showed me how he'd made feces looking material out of brownies, coffee and toilet paper.

(DE # 8-2.)

On July 2, 2012, a disciplinary hearing officer found Price guilty of attempted assault, and imposed 365 days disciplinary segregation, a 365-day earned credit time deprivation, and demotion from credit class 1 to credit class 3. (DE # 8-5.) Price appealed to the MCF Superintendent, who denied the appeal on August 20, 2012, but modified the charge to A-117/111, Attempted Assault on Staff (including contractors and volunteers) which results in serious bodily injury. (DE # 8-9.) The Superintendent also modified the segregation sanction to time served.

Price appealed to the Indiana Department of Correction ("IDOC") Final Reviewing Authority, and his appeal was denied by letter dated September 23, 2012. (DE # 8-11.) However, on April 17, 2013, the Final Reviewing Authority reconsidered his decision and reduced the charge against Price to Class B 240/212, an attempted assault/battery upon another person without a weapon or inflicting serious injury. (DE # 8-12.) The final reviewing authority also reduced the sanctions to a 90-day loss of earned credit time and a demotion from credit class 1 to 2. (*Id.*).

Where prisoners lose good time credits at prison disciplinary hearings, the Fourteenth Amendment's Due Process Clause guarantees them certain procedural protections, including (1) advance written notice of the charges; (2) an opportunity to be heard before an impartial decision maker; (3) opportunity to call witnesses and present exculpatory evidence in defense when consistent with institutional safety and correctional goals; and (4) a written statement by the fact finder of evidence relied on and the reasons for the disciplinary action. *Wolff v. McDonnell*, 418 U.S. 539, 563-66

(1974). There also must be "some evidence" to support the decision of the prison disciplinary board." *Superintendent, Mass. Correctional Institution v. Hill*, 472 U.S. 445, 455 (1985).

In ground one of his petition for writ of habeas corpus, Price asserts that he "was denied the right to a lay advocate of his own choosing . . . ." (DE 1 at 8.) Under *Wolff v. McDonnell*, due process only requires a lay advocate in very limited circumstances, specifically, where the inmate is illiterate "or [where] the complexity of the issue makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case." *Wolff*, 418 U.S. at 570; *Hester v. McBride*, 966 F.Supp. 765, 774-75 (N.D. Ind. 1997). Price does not assert that he is illiterate, and his submissions in this case establish that he is literate and capable of articulating his position. Moreover, there was nothing particularly complex about this disciplinary proceeding, as the case boiled down to whether or not Price attempted to throw something at another person. Because the Petitioner is not illiterate and his case was not complex, he was not entitled to appointment of a lay advocate under *Wolff v. McDonnell*.

Price states in his petition that prison officials did appoint him a lay advocate, but argues that his lay advocate did not provide a defense, and "effectively denied Petitioner Price his right to effective or meaningful assistance in his defense." (DE # 1 at 8.) But, because he was not entitled to a lay advocate, Price's "ineffective lay advocate" claim fails. *Outlaw v. Wilson*, No. 3:07-CV-55, 2008 WL 544832, at *2 (N.D. Ind. Feb. 25,

3

2008) ("Second, [petitioner] argues that his lay advocate was ineffective. Such a claim can only be meaningful if he was entitled to a lay advocate."); *McBride,* 966 F. Supp. at 775.

In ground two of his habeas petition, Price asserts that he was denied the ability to identify correctional officers to call as witnesses. He states that he did not know the names of the officers who were working on the unit and that, as a result, he "was left with no viable option but to call inmate witnesses on his behalf." (DE # 1 at 9.) The conduct report was written against Price on June 14, 2012 (DE # 8-1), he was screened on June 21, 2012, (DE # 8-4), and the hearing was conducted on July 2, 2012. (DE # 8-5.) Price had twelve days within which to ask the officers who worked on his range if they were working the day of the incident and to obtain statements from those that were working that day. Therefore, Price had ample time to discover the names of the officers who were working at the time, and his second ground for relief therefore fails.

In ground three of his petition for writ of habeas corpus, Price asserts that the WCF Superintendent did not respond to his appeal within the time provided by Indiana Department of Correction ("IDOC") policy. Section 2254(a) provides that federal courts shall entertain an application for writ of habeas corpus on behalf of a person in state custody "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." Relief in this action is only available from violation of the federal Constitution or laws. *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). Violations of prison disciplinary policies do not state a claim for federal

4

habeas relief. *Id.* at 67-68; *McBride*, 966 F. Supp. at 774-75. The claim that the Superintendent did not respond as quickly as he should have to Price's appeal does not implicate any of the due process protections afforded to prisoners by *Wolff v. McDonnell*, and Price's third ground for relief therefore fails.

In ground four of his habeas petition, Price states that the finding of guilt was based on perjured testimony and altered photographs that "completely misrepresented the truth of the matters at issue." (DE # 1 at 11.) Although there were witness statements and photographs taken of the substance prepared and thrown by Price (DE # 8-5), the hearing officer did not rely on witness statements or photographs to find Price guilty. In the portion of the disciplinary hearing report entitled "Reasons for decision" the hearing officer wrote that the conduct report supports a guilty decision. (*Id.*)

The amount of evidence needed to support a finding of guilt in prison disciplinary hearings is very modest; there need only be "some evidence" to support the decision of the prison disciplinary board." *Supt. Mass. Correctional Institution*, 472 U.S. at 455. A reviewing court must uphold a finding of guilt if "there is any evidence in the record that could support the conclusion reached" by the board. *Id.* at 455-56. In the appropriate circumstances, the conduct report alone may be sufficient evidence to support a finding of guilt. *See McPherson v. McBride*, 188 F.3d 784, 786 (7th Cir. 1999).

If the IDOC Final Reviewing Authority had not modified the charge against Price, there would not have been sufficient evidence to support a finding of guilt. The

original conduct report accused Price of violating Code number of 111/102.[1] Offense A-102 is defined by the IDOC disciplinary policy as "Assault/battery upon another person, with a weapon (including the throwing of bodily fluids or waste on another person) or inflicting serious injury." (DE # 8-3 at 1.)

There is insufficient evidence in the record to support a finding of guilt as to this charge. The conduct report states that the author "witnessed offender Price throwing what *appeared* to be feces out of his cell toward the officers walking the range. When I walked to Offender Price[']s cell and asked what in the world are you doing he showed me how he'd made feces looking material out of brownies, coffee and toilet paper." (DE # 8-1) (emphasis added). The conduct report does not mention a weapon, and nothing in the record suggests that the substance thrown by Price was actually bodily waste. Moreover, nothing in the record suggests that any person was hit by the object thrown by Price or suffered any injury, let alone a serious injury.

The WCF Superintendent modified the charge against Price to a charge of A-117/111. (DE # 8-9.) Offense A-117 is defined by the IDOC disciplinary policy as "Assault on Staff (including contractors and volunteers) which results in serious bodily injury." (DE 8-3 at 1.) There is insufficient evidence to support a finding of guilt as to this charge because, as noted above, nothing in the record suggests, let alone

---

[1] The IDOC disciplinary policy defines Offense A 111 as "Conspiracy/Attempting/ Aiding/ abetting to commit any class A Offense." (DE # 8-3 at 1.) There is no evidence supporting this charge because nothing in the record suggests that Price conspired with or aided or abetted any other inmate.

establishes, that whatever Price threw hit anyone, let alone inflicted bodily injury on any staff member.

The IDOC final reviewing authority reduced the charge against Price to "a class B 240/212.[2] (DE # 8-12), and substantially reduced the sanctions imposed on him. The IDOC disciplinary policy defines Offense B 212 as "Assault/battery upon another person without a weapon or inflicting serious injury (e.g. fighting)." (DE # 8-3 at 1.)

The Fourteenth Amendment's due process clause guarantees prisoners advance written notice of the charges against them "to give the charged party a chance to marshal the facts in his defense and to clarify what the charges are, in fact." *Wolff*, 418 U.S. at 564. Prison officials may, however, change the charge after the conduct report is written, so long as the new charge also conforms to the facts stated in the original conduct report. For example:

> . . . *Wolff v. McDonnell* does not require the infraction notice to specify whether the offense charged was serious or minor. Here, the charge was possession of the Valium, and while the change from a Rule 24 charge to a Rule 3 charge raised the potential penalties, *the factual basis for both was possession of the same Valium at the same time. It is evident that the conduct violation report gave Holt all of the information he needed to make his defense.*

*Holt v. Caspari*, 961 F.2d 1370, 1373 (8th Cir. 1992) (emphasis added).

Disciplinary Offense A 102, with which Price was initially charged, and Offense B 212 both charge an inmate with committing battery/assault upon another. The facts

---

[2] The IDOC disciplinary policy defines Offense B 240 as "Conspiracy/Attempting/ Aiding/ abetting to commit any class B Offense." (DE # 8-3 at 2.) There is no evidence supporting this charge because nothing in the record suggests that Price conspired with or aided or abetted any other inmate.

outlined in the conduct report would support the assault element of either charge, though they would not support the "bodily injury" element of Offense A 102. Accordingly changing the offense with which Price was accused of violating did not deny him due process because the conduct violation report stated facts that supported the corrected charge and provided the facts Price needed to prepare his defense against both the original charge and the corrected charge.

The author of the conduct report states that she witnessed Price throw something in the direction of officers working on the range. (DE # 8-1.) Accordingly, there is sufficient evidence on the record to support a charge of an attempted assault/battery upon another person without a weapon or inflicting serious injury, which is the offense that Price's charge was ultimately reduced to. Price's fourth ground for relief therefore fails. *Supt. Mass. Correctional Institution*, 472 U.S. at 455.

In ground five of his habeas petition, Price asserts that he "received excessive sanctions . . . given the totality of the circumstances." (DE # 1 at 13.) It is true that the original sanctions imposed on Price were severe, extreme, and draconian for such a minor offense, and indeed those sanctions exceeded the sanctions that IDOC policy allows to be imposed upon a finding of guilt of Offense B 212. But when the IDOC Final Reviewing Authority reduced the charge against Price to B 212 , it also greatly reduced the sanction imposed upon him. Accordingly, this ground is now moot because the sanctions Price complains of are no longer in effect.

For the foregoing reasons, the court **DENIES** this petition for writ of habeas corpus, and **DIRECTS** the Clerk to close this case.

**SO ORDERED.**

Date: May 31, 2013

s/James T. Moody<br>JUDGE JAMES T. MOODY<br>UNITED STATES DISTRICT COURT

cc: Petitioner
 Indiana Attorney General
 Commissioner, Indiana Department of Correction